(No. 4918-)

R. E. Crim, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed February 23, 1962.*

James E. Bales, Attorney for Claimant.

William G. Clark, Attorney General; William H. South, Assistant Attorney General, for Respondent.

Perlin, J.

Claimant, R. E. Crim, brings this action to recover damages caused when three inmates escaped from the Dixon State School, entered upon claimant's real estate, and set fire to his barn, totally destroying the barn and most of its contents. Neither the facts nor the amount of damages are in dispute.

The parties have stipulated to the following:

1. On April 21, 1960, the State of Illinois owned and operated the Dixon State School at Dixon, Illinois, an institution for the mentally deficient.

2. On that date, John Fleury, Robert Mays and Charles Clark left the Dixon State School grounds on an unauthorized absence, and made their way to the farm of one R. E. Crim, which was located approximately one and one-half miles from the school grounds.

3. They acquired some matches from the Crim automobile parked in the barn lot of the farm, and, after making their way to the hay loft of the Crim barn, they started several small fires, one of which they could not put out, and which destroyed the barn and much of its contents.

4. The records of the Dixon State School show that John Fleury was committed to the school as a mentally

deficient person on June 8, 1955; Robert Mays was committed to the school as a mentally deficient person on December 4, 1959; Charles Clark was committed to the school as a mentally deficient person on February 16, 1960; and, all were residents of the school on April 21, 1960.

5. The records of the school further show that John Fleury had a history of delinquency prior to his commitment to the Dixon State School, and that he had been known to set small fires prior to his commitment. During his residency at the Dixon State School, he had left it without authority on at least one occasion prior to April 21, 1960, and, on or about December 8, 1959, a small fire was discovered beneath one of the institution buildings at the school, in which incident Fleury "was strongly implicated."

6. The records also show that both Robert Mays and Charles Clark had a history of delinquency prior to their commitment to the Dixon State School, and that each of them was committed after having been in custody of the St. Charles School for Boys as delinquent children.

7. The Dixon State School is operated as an institution for the mentally deficient in accordance with accepted standards and practices of institutions of similar type located in the United States. The residents of the school are housed in cottages containing from fifty to one hundred and fifty persons. The school is operated on the "open cottage" principle, that is, the doors of the cottages are not locked during the daylight hours, and the inmates of the cottages are permitted to go to and from their assigned school, therapy or recreation areas without adult supervision.

8. The institution grounds are not fenced or regularly patrolled, and the inmate checks are made by per-

sons in charge of the cottages, school, therapy and recreation areas at the times the inmates are performing functions under the supervision of such persons.

Respondent contends that the State was not negligent in permitting the inmates to leave without permission. This contention is based on the fact that the Dixon State School was conducted in accordance with accepted standards for the operation of institutions for the mentally deficient, and that it is not fenced in accordance with such operating principles. Therefore, respondent claims that there can be no inference from the evidence that any act or omission on the part of respondent caused or materially contributed to the absenting of the inmates from the school.

The case of *Dixon Fruit Company, Et Al,* vs. *State of Illinois,* 22 C.C.R. 271, presented facts almost identical to those in the instant case. The Court held that a finding of negligence is preliminary to an award in a case involving damage by an escaped inmate, since the State is not an insurer. In that case, an inmate of the Dixon State School was allowed to wander at will, although he had a record disclosing that he was a mental defective, and possessed a history of previous escapes and of incendiarism. He was kept in a cottage, which was not a maximum security cottage, escaped from the school grounds, and burned a truck. In holding that the State was negligent, the Court declared:

"It appears to us that respondent should have exercised more restrictive control over the movements of this particular patient. It does not seem reasonable to us that a known mental defective, with an exhibited tendency toward incendiarism, should have been allowed to wander at will without supervision in an institution wherein there were no restraining walls or other means of controlling his movements. This is especially so in view of the institution's location with respect to the City of Dixon, wherein the property of many persons would be jeopardized by the activities of such a patient.

"It is, therefore, our finding that respondent was negligent in failing to take further measures in controlling the activities of this particular patient,

and should, therefore, respond in damages. *Malloy* vs. *State*, 18 C. C. R. 137."

The negligence of the State of Illinois in allowing John Fleury to roam the grounds without supervision is even more evident than in the *Dixon Fruit* case in view of the fact that Fleury had not only previously escaped, but had manifested a propensity for incendiarism, and that respondent strongly suspected that Fleury had attempted to set fire to the buildings of the institution itself.

Because the State was clearly negligent as to lack of proper supervision over John Fleury, it appears not necessary to determine whether it should have similarly restricted Robert Mays and Charles Clark, although both had histories of delinquency prior to their commitment to the Dixon State School, and both had been committed to St. Charles School for Boys as delinquent children.

It was stipulated that the damage to the contents of the barn amounted to $500.00. An expert witness testified that the fair, reasonable market value of the barn as of April 21, 1960 was $6,750.00, which amount was not disputed by respondent. We must assume, therefore, that respondent was in agreement with this valuation.

It is, therefore, the judgment of this Court that claimant be awarded the sum of $7,250.00.